J-S70044-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: R.R., a Minor | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: O.R.R., Mother | : | No. 1023 EDA 2016 |

Appeal from the Decree dated March 7, 2016
in the Court of Common Pleas of Philadelphia County
Family Court Division at No(s): CP-51-AP-0000709-2015,
CP-51-DP-0000888-2012, FID: 51-FN-001587-2012

| | | |
|---|---|---|
| IN THE INTEREST OF: E.A.R., a Minor | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: O.R.R., Mother | : | |
| | : | |
| | : | No. 1079 EDA 2016 |

Appeal from the Decree Dated March 7, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000710-2015,
CP-51-DP-0000887-2012, FID: 51-FN-001587-2012

BEFORE: OLSON, OTT and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED NOVEMBER 23, 2016**

O.R.R. ("Mother") appeals from the Decrees granting the Petitions filed by the Philadelphia Department of Human Services ("DHS") for the involuntary termination of her parental rights to her female child, E.A.R., born in February 2005, and her male child, R.R., born in February 2006

("Children"), pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(2) and (b)[1] We affirm.

In its Opinion, the trial court set forth the relevant factual and procedural background, which we adopt herein for the purpose of this appeal. *See* Trial Court Opinion, 5/31/16, at 1-2 (unnumbered). Mother filed separate, timely appeals from the trial court's Decrees,[2] and thereafter filed a court-ordered Concise Statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2) and (b).[3]

On appeal, Mother raises the following issues for our review:

1. Whether the trial court committed reversible error when it involuntarily terminated Mother's parental rights[,] where such determination was not supported by clear and convincing evidence under [] 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (8)?

2. Whether the trial court committed reversible error when it involuntarily terminated Mother's parental rights without giving primary consideration to the effect that the termination would have on the developmental, physical and emotional

_____

[1] The trial court also terminated the parental rights of Children's father, R.R., a/k/a R.R., Sr., a/k/a D.R. ("Father"). Father has not appealed the termination of his parental rights to Children, and is not a party to the instant appeal.

[2] In its Decrees, the trial court also granted DHS's Petitions to change the permanency goals for Children to adoption under the Juvenile Act, 42 Pa.C.S.A. § 6351. However, Mother does not challenge this aspect of the Decrees.

[3] On May 2, 2016, this Court, acting *sua sponte*, consolidated Mother's appeals.

needs of [Children,] as required by [] 23 Pa.C.S.A. § 2511([b]).

Mother's Brief at 4.[4]

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.
>
> … [U]nlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

---

[4] Although, in her first issue, Mother purports to challenge the termination pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (8), her argument is limited to subsection 2511(a)(2). *See* Mother's Brief at 8-11. Additionally, the trial court terminated Mother's parental rights to Children under 2511(a) based solely on subsection 2511(a)(2). *See* Trial Court Opinion, 5/31/16, at 2 (unnumbered).

***In re Adoption of S.P.***, 47 A.3d 817, 826–27 (Pa. 2012) (citations omitted).

Termination of parental rights is controlled by section 2511 of the Adoption Act. ***See*** 23 Pa.C.S.A. § 2511. The burden is on the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. ***In re R.N.J.***, 985 A.2d 273, 276 (Pa. Super. 2009). "[C]lear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***Id***. (citation and quotation marks omitted).

Satisfaction of any one subsection of Section 2511(a), along with consideration of Section 2511(b), is sufficient for the involuntary termination of parental rights. ***In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). In this case, we will review the trial court's decision to terminate Mother's parental rights based upon section 2511(a)(2) and (b), which state the following:

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * *
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

- 4 -

* * *

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

In her first issue, Mother contends that DHS did not prove by clear and convincing evidence that her parental rights to Children should be terminated pursuant to subsection 2511(a)(2). Mother's Brief at 8. Mother concedes that Erica Williams, Psy.D. ("Dr. Williams"), an expert in child psychology, testified that Mother "did not present with the necessary capacity to provide safety and permanency for either child." *Id*. (citing N.T., 3/7/16, at 10). Mother further concedes that DHS social worker, Lawrence Barnes ("Barnes"), testified that Children are cognitively delayed and have special educational needs that Mother is unable to meet. Mother's Brief at 11 (citing N.T., 3/7/16, at 22). Nevertheless, Mother points to Dr. Williams's testimony that Mother did present with some strengths, including having obtained housing, having a financial plan to provide for Children, and her ongoing compliance with DHS objectives. Mother's Brief at 11. Mother further claims that she followed all of the recommendations in her parenting

capacity evaluation. *Id*. On this basis, Mother argues that DHS failed to meet its burden under subsection 2511(a)(2). *Id*.

In its Opinion, the trial court addressed Mother's first issue, set forth the relevant law, and determined that it lacks merit. *See* Trial Court Opinion, 5/31/16, at 3 (unnumbered). A careful review of the record in this matter discloses that the trial court's factual findings are supported by the record, and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *See id*.; *see also In re Adoption of S.P.*, 47 A.3d at 826-27. While Mother found stable housing and had a financial plan, her mental health issues prevented her from providing Children with safety and permanency. Thus, we will not disturb the trial court's determination that DHS satisfied the requirements of subsection 2511(a)(2) by clear and convincing evidence. *See* Trial Court Opinion, 5/31/16, at 3 (unnumbered).

In her second issue, Mother challenges the trial court's determination that termination of her parental rights to Children would be in Children's best interests pursuant to subsection 2511(b). Mother's Brief at 12-14. Mother acknowledges Barnes's testimony that Children had indicated to him that they did not want to return to Mother, and that Children would not suffer any emotional harm if Mother's parental rights were terminated. *Id*. at 13 (citing N.T., 3/7/16, at 26-27, 30). However, Mother points to Barnes's further testimony that he had not personally witnessed any of her visits with Children; he believed that there was a parental bond between

Mother and R.R.; and that, prior to 2015, R.R. consistently stated that he wished to return to Mother. Mother's Brief at 13 (citing N.T., 3/7/16, at 30). Mother asserts that, because the evidence established that there was a necessary and beneficial relationship between her and Children, DHS did not satisfy its burden of proving that termination is in the best interests of Children. Mother's Brief at 14.

Regarding subsection 2511(b), the court inquires whether the termination of Mother's parental rights would best serve the developmental, physical and emotional needs and welfare of Children. *See In re C.M.S.*, 884 A.2d 1284, 1286-87 (Pa. Super. 2005). Whereas the focus in terminating parental rights under subsection 2511(a) is on the parent, under subsection 2511(b), the focus is on the child. *In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *See In re C.M.S.*, 884 A.2d at 1287 (citation omitted). The court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id*.; *see also In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (stating that "the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship."). "[W]e will not toll the well-being and permanency of [a child] indefinitely." *In re Adoption of*

*C.L.G.*, 956 A.2d at 1007 (citing *In re Z.S.W.*, 946 A.2d 726, 732 (Pa. Super. 2008) (noting that a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting.")). Additionally, "the strength of [the] emotional bond between a child and a potential adoptive parent is an important consideration in a 'best interests' analysis." *In re I.J.*, 972 A.2d 5, 13 (Pa. Super. 2009); *see also In re T.S.M.*, 71 A.3d 251, 268 (Pa. 2013) (stating that "courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents.").

Although the trial court did not expressly state in its Opinion that there is no bond between Children and Mother, it determined that Children share a parental bond with their foster parents, that E.A.R. does not look to Mother as her primary caregiver, and that R.R. looks to the foster family for love, comfort, care and support. *See* Trial Court Opinion, 5/31/16, at 4 (unnumbered). The trial court further determined that Children were previously placed in foster care when the family resided in Georgia,[5] and that, upon moving to Pennsylvania, Children have been in foster care since May 2012. *See id*. at 2, 3 (unnumbered). The trial court also credited

---

[5] Our review of the record confirms that Children spent several years in foster care while the family resided in Georgia. *See* N.T, 3/7/16, at 21 (wherein Barnes testified that Children were placed in foster care in Georgia when they were approximately 1½ and 1-years-old, respectively, and that they remained in foster care in Georgia for two or three years).

Barnes's testimony that Children would not suffer permanent emotional harm if Mother's rights were terminated, and that it would be in Children's best interests if Mother's parental rights were terminated and their permanency goal changed to adoption. **See id**. at 4 (unnumbered) (citing N.T., 3/7/16, at 26-27).[6]

Thus, even if Mother and Children are still bonded, that bond is outweighed in the instant matter by Mother's inability to remedy the causes of Children's placement, and by Children's need for permanence and stability. **See Adoption of C.J.P.**, 114 A.3d 1046, 1054-55 (Pa. Super. 2015); **see also In re Adoption of R.J.S.**, 901 A.2d 502, 513 (Pa. Super. 2006) (holding that "[t]he court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future."). While Mother may love Children, a parent's own feelings of love and affection for a child, alone, will not preclude the termination of parental rights. **See In re Z.P.**, 994 A.2d at 1125. Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a

---

[6] Our review of the record further reveals that Mother has a history of significant mental health issues, including depression, multiple personality disorder, hallucinations, schizophrenia and suicidal ideations. **See** N.T, 3/7/16, at 11, 16, 17; **see also** Report of Forensic Evaluation, 2/23/15, at 6-7 (unnumbered).

permanent, healthy, safe environment." ***In re B., N.M.***, 856 A.2d 847, 856 (Pa. Super. 2004). Accordingly, we conclude that the competent evidence of record supports the trial court's determination that Children would not suffer any emotional harm from the termination of Mother's parental rights, and that the termination of Mother's parental rights would serve Children's best interests. ***See*** Trial Court Opinion, 5/31/16, at 4 (unnumbered); ***see also In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013) (reiterating that the mere existence of a bond or attachment of a child to a parent will not necessarily result in the denial of a termination petition).

Accordingly, we affirm the Decrees terminating Mother's parental rights to Children pursuant to section 2511(a)(2) and (b) of the Adoption Act.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/23/2016

IN THE COURT OF COMMON PLEAS

FOR THE COUNTY OF PHILADELPHIA

FAMILY COURT DIVISION

| | | |
|---|---|---|
| IN RE: E.R. | : | CP-51-DP-0000887-2012 |
| | : | CP-51-AP-0000710-2015 |
| IN RE: R.R. | : | CP-51-DP-0000888-2012 |
| | : | CP-51-AP-0000709-2015 |
| | | |
| APPEAL OF: O.R.R., Mother | : | 1023 EDA 2016 |
| | : | 1079 EDA 2016 |

OPINION

**Irvine, J.**

This appeal arises from this Court's order on March 7, 2016 terminating the parental rights of O.R.R. ("mother") mother. Mother's parental rights were terminated pursuant to the petitions filed on behalf of the Department of Human Services (DHS) by the city of Philadelphia Solicitor's Office.

Neal M. Masciantonio, counsel for mother, filed a timely appeal from the March 7, 2016 order terminating parental rights with attached Concise Statements of Errors, Affidavits of Service, and other related documents necessary to perfect this appeal.

**Factual and Procedural Background**

A summary of the relevant procedural history is set forth as follows:

The children were born as follows: E.R., was on February 3, 2005 and R.R. on February 1, 2006.

On May 21, 2012, DHS received a General Protective Services (GPS) report alleging that E.R. and R.R. were at the Hospital at the University of Pennsylvania (HUP). The children's father was

recuperating from brain surgery at HUP. The mother, O.R.R., was incarcerated. The family had recently relocated to Philadelphia from Atlanta, Georgia. The father was unable to care for the children due to his health issues. The report further alleged that the children were diagnosed with special needs. The children had previously been in foster care while the family resided in Georgia.

On May 22, 2012, DHS obtained an order of Protective Custody (OPC) for the children. The children were placed in foster care.

A shelter care hearing was held on May 24, 2012 before the Honorable Jonathan Q. Irvine. Judge Irvine lifted the OPC and ordered the temporary commitment of the children to the care and custody of DHS.

On June 25, 2012, an adjudicatory hearing was held before the Honorable Jonathan Q. Irvine. Judge Irvine adjudicated E.R. and R.R. dependent and committed them to the care and custody of DHS.

The matter was listed on a regular basis before Judges of the Philadelphia Court of Common Pleas – Family Court Division – Juvenile Branch pursuant to section 6351 of the Juvenile Act, 42 Pa C.S.A. §6351, and evaluated for the purpose of determining or reviewing the permanency plan of the child.

In subsequent hearings, the DRO's reflect the Court's review and disposition as a result of evidence presented, addressing, and primarily with, the goal of finalizing the permanency plan.

On March 7, 2016, a Termination of Parental Rights hearings for O.R.R., the mother, was held in this matter. The Court found by clear and convincing evidence that the mother's parental rights of E.R. and R.R. should be terminated pursuant to the Pennsylvania Juvenile Act. Furthermore, the Court held it was in the best interest of the children that the goal be changed to adoption.

The instant timely appeal of the father follows.

**Discussion:**

The grounds for involuntary termination of parental rights are enumerated in the Adoption Act at 23 Pa. C.S.A. §2511. In the present case, mother's parental rights were terminated based on §2511(a) (2), and §2511(b).

§2511(a) provides that parental rights may be terminated based on any one of the grounds enumerated therein:

> General rule- the rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

In proceedings to involuntary terminate parental rights the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for termination. *In re Adoption of Atencio*, 539 Pa. 161, 650 A.2d 1064 (1994)

A parent has an affirmative obligation to act in his child's best interest. In reference to parental contact, "to be legally significant, the contact must be steady and consistent over a period of time, contribute to the psychological health of the child, and must demonstrate a serious intent on the part of the parent to recultivate a parent-child relationship, and must demonstrate a willingness and capacity to undertake the parental role". *In re D.J.S.*, 737 A2d 283,286 (1999) (quoting *In re Adoption of Hamilton*, 379 Pa. Super. 274, 549 A.2d 1291, 1295 (1988)).

In the instant matter, the children have been in placement care for over forty-three months. The testimony established that the children reside in safe homes with their needs being met. (N.T., 3-7-16, p. 28) Furthermore, the Court found that the termination of the mother's parental rights is in the best interest of the children. (N.T., 3-7-16, pgs. 26-27).

Section 2511 (a) (2) requires that "repeated and continued incapacity, abuse neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for her physical or mental well-being and the condition and causes of the incapacity, abuse, neglect or refusal, cannot or will not be remedied by the parent. 23 Pa. C.S.A. §2511 (a) (2).

Courts have further held that the implications of a parent's limited success with services geared to remedy the barriers to effective parenting can also satisfy the requirements of §2511 (a) (2). *In the matter of B.L.W.*, 843 A.2d 380 (Pa. Super. 2004), the Court's grave concerns about Mother's ability to provide the level of protection, security and stability" that her child needed was sufficient to warrant termination. Id. at 388

Termination of parental rights under §2511(a)(2) is not limited to affirmative misconduct but may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d326, 337 (Pa. Super.2002).

In the instant case, Dr. Erica Williams, an expert witness in family psychology conducted a parenting capacity evaluation (PCE) with the mother. Dr. Williams testified that the mother "did not present with the necessary capacity to provide safety and permanency for either child" (N.T., 3-7-16, p. 10). Furthermore, the DHS social worker testified that E. R. has attention deficit hyperactivity disorder (ADHD) and R.R. has autism. The children are cognitively delayed and have special educational needs. The mother is unable to meet the special needs of the children. (N.T., 3-7-16, p. 22). Moreover, the DHS social worker stated that the mother does not have the capacity to provide adequate safety for the children (N.T., 3-7-16, p. 23). Lastly, the children had previously been in foster care for at least two years due to failure to thrive. (N.T., 3-7-16, p. 21).

In order to terminate the parental rights, the party seeking termination must prove by clear and convincing evidence that the termination is in the best interest of the child. 23 Pa. C.S.A. §2511(b); *In re Bowman,* 436 Pa. Super. 647 A.2d 217 (1994). The best interest of the child is determined after consideration of the needs and welfare of the child. The trial court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his parental rights to determine if the evidence in light of the totality of the circumstances clearly warrants involuntary termination.

When determining the best interest of a child, many factors are to be analyzed, "such as love, comfort, security and stability. *In re Adoption of T.B.B.,* 787 A.2d 1007, 1013-1014 (Pa. Super. 2003). Another factor that a court is to consider is what, if any bond exists for the child. *In re Involuntary Termination of C.W.S.M. and K.A.L.M.,* 839 A.2d 410,415 (Pa. Super. 2003).

The termination of parental rights is controlled by 23 Pa. C.S.A §2511(a). Under this statute, the trial court must engage in a bifurcated process in which it initially focuses on the conduct of the parent under Section 2511 (a). *In the Interest of B.C.,* 36 A.3d 601 (Pa. Super. 2012). If the trial court determines that the parent's conduct warrants termination under Section 2511 (a), it must then engage in an analysis of the best interest of the child under Section 2511(b). *See id.*

Pursuant to Section 2511 (b), the trial court must take in account whether a natural parental bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship. *In Re C.S.,* 761 A.2d 1197, 1202 (Pa. Super. 2000).

In the instant matter, E.R. does not look to the mother as her primary caregiver. (N.T. 3-7-16, p. 27) The child, R.R., shares his parental bond the foster parents (N.T., 3-7-16, p. 25-26). R.R. looks to the foster family for love, comfort, care and support (N.T., 3-7-16, p. 25). Furthermore, the children indicated to the social worker that they do not want to return to the mother. (N.T., 3-7-16, pgs., 26-27, and 30). Moreover, the testimony indicated that the children would not suffer permanent emotional harm if the mother's rights were terminated. (N.T., 3-7-16, pgs. 26-27). Lastly, the social worker testified that it would be in the best interest of the children if the mother's parental rights were terminated and the children's goal changed to adoption. (N.T., 3-7-16, pgs. 26-27).

The Trial Court found by clear and convincing evidence that the Department of Human Services met their statutory burden pursuant to 23 Pa. C.S.A. § 2511 (a) & (b) and that it was in the best interest of the children to change the goal to adoption (N.T., 3-7-16, p.38).

**Conclusion:**

Accordingly, the Trial Court's Decree entered on March 7, 2016 terminating the parental rights of O.R.R. should properly be affirmed.

By the Court

_____ J.